**PETE DOYE OIL FIELD SERVICE and Commercial Standard Insurance Co., Petitioners,**

v.

**Gordon L. LEWIS and State Industrial Court, Respondents.**

**No. 40775.**

Supreme Court of Oklahoma.

July 14, 1964

Rehearing Denied Sept. 15, 1964.

Rinehart, Morrison & Cook, Oklahoma City, for petitioners.

Harold M. Durall, Oklahoma City, for respondent Gordon L. Lewis.

Charles Nesbitt, Atty. Gen., Oklahoma City, for respondent State Industrial Court.

BLACKBIRD, Chief Justice.

This is an original proceeding filed in this court to review proceedings by the State Industrial Court, wherein said court entered an order awarding the respondent, Gordon L. Lewis, hereinafter referred to as claimant, compensation for temporary total disability on account of an accidental injury on January 25, 1963, described in the order merely as "an injury to his back", and found, by said court, to have arisen out of, and in the course of, his hazardous employment with Pete Doye Oil Field Service, hereinafter referred to as petitioner.

According to the Form 3 claimant filed with the Industrial Court his injury occurred when he "stepped out of truck in bar ditch, into hole."

At the trial of his claim, claimant testified that he was the driver of a tank truck for petitioner; that on the morning of the accident petitioner sent him in the truck, about a mile and a half or two miles southwest of its yard east of Velma, to the Skelly Lease, to pump, and transfer, out of a leaky heater the oil and water in it; that when he arrived at the lease in the truck "there was a couple of vehicles" in the yard around the dog house where he had always parked the truck before, so he "parked out into * * * (on) an oil

field road." Claimant further testified: "On this road there was about a four feet terrace to keep the water from washing in around the tanks and dog-house, so I pulled up at the side and looked out and I didn't notice there was a bar ditch there and I stepped out in this bar ditch and kind of twisted my back." Claimant further testified that "near his belt line" he had "an awful hurting stinging sensation right in the middle * * *" of his back, and "I just went to my knees." Claimant further testified that the accident occurred about 8:30 in the morning, and that when he had gotten up, "hobbled" over to Skelly's pumper in the dog house, " * * * seen what all he wanted done * * *", and told him he would have to have some help, he went back to petitioner's office and procured petitioner's mechanic, Don Melvern, and one of petitioner's trucks, to help with the Skelly job. Claimant further testified, in substance, that Melvern did "all the work" involved in cleaning out the heater, and that all the witness did was operate his truck. He further testified that Melvern got through with what he did about one o'clock in the afternoon, and claimant drove back to petitioner's yard, arriving there a few minutes before 3:00 P.M., where he reported to Mr. Doye that he had hurt his back, and had to get something done. Claimant further testified that Doye offered to take him to a doctor, but that he declined this offer so that he could go home and clean up first. He further testified that after he drove his pickup home and cleaned up, his daughter drove him into Duncan to see petitioner company's physician, Dr. K. Because of Dr. K's illness his secretary referred claimant to a Dr. B, who examined him, gave him a shot for muscle spasms and immediately hospitalized him. During the following three weeks of hospitalization, claimant was in traction and received diathermy treatments twice daily. During that period, and after Dr. K recovered from his illness sufficiently to attend patients, he also examined claimant at petitioner's request. Claimant was also examined by an ortho-

pedic specialist of Wichita Falls, Texas, a Dr. V. Following his hospitalization in Duncan, claimant was hospitalized in Baylor Hospital at Dallas, for about two weeks, during which he was attended by Dr. H. Upon his leaving Baylor Hospital, Dr. H referred claimant back to Dr. B, who again examined him. Later claimant was again examined by Dr. V and hospitalized in Wichita Falls General Hospital, where Dr. V operated on his back. Claimant testified at the trial that he had not worked since his above described injury of January 25, 1963; that he still could not walk "real easy", that his back is sore, stingy and has "kind of a sharp pain" in it, "where the operation was" and that his right leg, below his hip "is asleep" clear into his foot. His demonstration of walking at the trial showed that he limps on his right leg.

Claimant's testimony further revealed that as early as the year 1947 or 1948, he pulled a muscle in his back, for which he was treated by an osteopath, and did not work for 10 days or two weeks on account of it; that in June, 1957, he fell through a rig floor, injuring his back while working for Fox Well Servicing Company; and that in 1959 his back was hurt again when he was thrown out of his pickup in a collision with another truck.

Facts other than those above narrated were developed in the evidence introduced in the trial, and are mentioned in petitioners' brief, but petitioners fail to show how they support their single proposition that: "There is no Competent Evidence to Sustain the Award." All of petitioners' specific arguments under this proposition appear to be concentrated in an attack on medical evidence furnished by a Dr. P who examined claimant on June 25th, 1963, at the request of his attorney. At the trial, Dr. P was interrogated concerning, among other things, his report of this examination that he had addressed to said attorney on the same date. In relating claimant's medical history the second paragraph of this report stated: "On April 17, 1963, he had surgical treatment by Doctor

V—(deleted) * * * for a herniated disc. A laminectomy and spinal fusion was done * * *." When petitioners' attorney's questioning of Dr. P revealed that the above quoted information about Dr. V's diagnosis, and his operation on claimant's back being for a herniated disc, was related to the witness by another, petitioners' attorney objected that it was hearsay; and their attorneys now argue that Dr. P "relied on the hearsay statement of the claimant as to the diagnosis of another physician in reaching his conclusion that the condition of claimant was due to the injury of January 25, 1963." Their conclusion, on the basis of their own quoted statement is: "It was error for the court to consider this opinion."

After referring to certain testimony. that was elicited from Dr. P on cross examination, to the effect that a herniated disc (like claimant was operated for) could be the result of continued degenerative changes and "any number of causes", in addition to specific traumatic injury, and to other portions of Dr. P's testimony to the effect that in determining the cause of such a disc condition, the patient's history must be relied upon, and, that if the history is incorrectly related or given, a medical diagnosis based thereon may also be in error "in proportion to the erroneous history * *", petitioners attempt to convince us that if Dr. P had not relied upon hearsay, as Dr. to V's diagnosis, he would have concluded, as did Dr. M, whose report petitioners introduced in evidence, that, in view of the various previous injuries to, and arthritic changes present in claimant's back, before his accident of January, 1963, it was impossible to state what necessitated the disc operation, and caused claimant's disability.

We find insufficient merit in petitioner's arguments to warrant vacation of claimant's award. Claimant's brief cites Sutherland Lumber Co. v. Roberts, 167 Okl. 646, 31 P.2d 581, wherein this court said:

"Medical testimony based on employee's statement at the time of the examination in compensation cases, though not made for the purpose of treatment, is competent."

Petitioners seek to counter the effect of this citation by changing, at least inferentially, their representation as to the source from which Dr. P received his information of Dr. V's diagnosis. In their reply brief, they seek to distinguish that case from the present one on the ground that here the information was related to Dr. P by Dr. V, instead of by the claimant, as represented in their initial brief. In fairness to counsel, we observe that affirmative answers Dr. P gave the two differently-worded questions, directed to him by petitioners' trial attorney, might support both representations, but in our view, whether Dr. P was told about Dr. V's diagnosis by the claimant, or by Dr. V himself, is immaterial under the circumstances of this case.

On the basis of the order before us, no one can say how much reliance Dr. P placed upon the stated purpose of claimant's previous operation, in arriving at his opinion that claimant's present disability was the result of his accident of January 25, 1963. His report reflects that he made his own independent examination of the claimant, and this included X-ray pictures giving independent evidence of the claimant's previous operation and of a previously performed myelogram, which he testified, in substance, is a more accurate aid in diagnosis than medical history. Nor does Dr. P's report positively support petitioners' inference that his doctor was not aware of claimant's previous back injuries at the time he arrived at the questioned opinion. His report mentions at least two of claimant's previous injuries, though the dates mentioned therein do not exactly coincide with claimant's testimony. Petitioners fail, however, to demonstrate that these discrepancies are material to, or lend substantial support to, their claim that Dr. P's report and testimony are incompetent as medical evidence. Nor, in view of the fact that it has never been denied that claimant actually had a herniated disc at the time Dr. V operated on him, do we see

how the manner in which Dr. P became acquainted with that fact has any bearing upon the competency of, or weight to be given, his opinion as to the cause of claimant's condition.

As above indicated, petitioners' argument has failed to demonstrate that the Industrial Court's finding as to the cause of claimant's disability is without competent evidence reasonably tending to support it. Accordingly, the order and award of that Court is hereby sustained.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.